**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| EDWARD HYDEN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| INTRAWEST RESORTS HOLDINGS, INC., WESLEY R. EDENS, THOMAS F. MARANO, RICHARD ARMSTRONG, WILLIAM J. CLIFFORD, RICHARD E. GEORGI, JOHN W. HARRIS III, AND TIMOTHY JAY, | ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff Edward Hyden ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.  This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Intrawest Resorts Holdings, Inc. ("Intrawest" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Intrawest, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between Hawk Holding Company, LLC, a Delaware limited liability company ("Parent"), Hawk Holding Company, Inc., a Delaware corporation ("Holding Company"), and Hawk Merger Sub, Inc., a Delaware corporation and a wholly owned subsidiary of Parent (the

"Merger Sub" and together with Parent and Holding Company "HHC").

2.      On April 7, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's stockholders stand to receive $23.75 in cash for each share of Intrawest common stock they own (the "Merger Consideration").

3.      On April 8, 2017, following the execution of the Merger Agreement, Fortress Investment Group LLC ("Fortress"), which on such date beneficially owned 27,038,250 shares of Company Common Stock representing approximately 67.9% of the 39,822,611 outstanding shares of Company Common Stock, delivered a written consent adopting and approving in all respects the Merger Agreement (the "Stockholder Consent"). As a result, no further action by any stockholder of the Company is required under applicable Delaware law or the Merger Agreement to adopt the Merger Agreement, and the Company will not be soliciting any votes for adoption of the Merger Agreement and will not call a stockholder meeting for purposes of voting on the adoption of the Merger Agreement.   Notwithstanding the Stockholder consent, the Company stockholders are entitled to exercise their appraisal rights.

4.      On May 22, 2017, the Board authorized the filing of a materially incomplete and misleading Definitive Information Statement (the "Information Statement") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act, which inhibits the Company stockholders from being able to exercise their appraisal rights on an informed manner.

5.      While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Information Statement, they have failed to disclose certain material information that is necessary for stockholders to properly assess the fairness of the Proposed

Merger, thereby rendering certain statements in the Information Statement incomplete and misleading.

6.     In particular, the Information Statement contains materially incomplete and misleading information concerning: (i) financial projections for the Company; and (ii) the valuation analyses performed by the Company's financial advisors, Deutsche Bank Securities Inc. ("Deutsche Bank") and Moelis & Company LLC ("Moelis"), in support of their fairness opinions.

7.     Stockholders only have 20 days from the filing of the Information Statement to submit a written demand for appraisal. If stockholders do not decide by June 12, 2017, they will lose all appraisal rights. Therefore, it is imperative that the material information that has been omitted from the Information Statement is disclosed to the Company's stockholders immediately, so that they can properly exercise their corporate suffrage rights.

8.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Regulation G, 17 C.F.R. § 244.100.  Plaintiff seeks to enjoin Defendants from consummating the Proposed Merger by the set deadline on **June 12, 2017.**

<u>**JURISDICTION AND VENUE**</u>

9.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

10.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

11.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Intrawest maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

12.     Plaintiff is, and at all relevant times has been, an Intrawest stockholder.

13.     Defendant Intrawest is a Delaware company and maintains its headquarters at 1621 18th Street, Suite 300 Denver, CO 80202. is a North American mountain resort and adventure company, delivering distinctive vacation and travel experiences to its customers for over three decades. The Company wholly owns and/or operates six four-season mountain resorts with approximately 8,000 skiable acres and over 1,100 acres of land available for real estate development. Intrawest's mountain resorts are geographically diversified across most of North America's major ski regions, including the Eastern United States, the Rocky Mountains, and Canada. The Company also operates an adventure travel business, the cornerstone of which is Canadian Mountain Holidays ("CMH"), a leading heli-skiing adventure company in North America. Intrawest's common stock trades on the NYSE under the ticker symbol "SNOW".

14.     Individual Defendant Wesley R. Edens is a director of Intrawest and is the Chairman of the Board. Mr. Edens is also the founding principal and Co-Chairman of the board of

directors of Fortress, whose 67.9% ownership of common stock provided Stockholder Consent for the Merger.

15.     Individual Defendant Thomas F. Marano is a director of Intrawest and is the Chief Executive Officer.

16.     Individual Defendant Richard Armstrong is, and has been at all relevant times, a director of the Company.

17.     Individual Defendant William J. Clifford is, and has been at all relevant times, a director of the Company.

18.     Individual Defendant Richard E. Georgi is, and has been at all relevant times, a director of the Company.

19.     Individual Defendant John W. Harris III is, and has been at all relevant times, a director of the Company.

20.     Individual Defendant Timothy Jay is, and has been at all relevant times, a director of the Company.

21.     All parties identified in paragraphs 14 through 20 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Intrawest (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable. As

of May 1, 2017, there were approximately 39,822,611 shares of Intrawest common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Intrawest will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

  i)      whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Information Statement in violation of Section 14(a) of the Exchange Act;

  ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

  iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to submit for an appraisal of the Proposed Merger based on the materially incomplete and misleading Information Statement.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual

members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

      f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

      g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    The Merger Consideration Appears to be Inadequate in Light of Intrawest's Recent Financial Performance**

24.    Intrawest, incorporated on August 30, 2013, is a mountain resort, adventure and real estate company. The Company operates through three segments: Mountain, Adventure and Real Estate. The Company owns and operates six four-season mountain resorts geographically diversified across North America's ski regions with approximately 8,000 skiable acres and over 1,120 acres of land available for real estate development.

25.    The Merger Consideration appears inadequate in light of the Company's recent financial performance.  On May 4, 2017, the Company announced positive financial results for the fiscal quarter ending March 31, 2017. Consolidated revenue increased 6.1% and Adjusted EBITDA increased 9.7%. CEO Tom Marano announced, "Third quarter results reflect our continued focus on growing pre-committed revenue streams, increases in yields, our ability to manage costs, and the impact of our growth capital investments."

26.    Indeed, at the time of the Merger Agreement on April 7, 2107, the stock was trading at a premium to the Merger Consideration, $25.50 to $23.75. That means instead of stockholders receiving a premium for their shares, as is customary in merger situations, Intrawest stockholders

would actually be offering their shares at a discount.

27.     The April 7 price of $25.50 marks a nearly 200% increase in Intrawest stock value
that occurred in the year leading up to the merger, as reflected in the chart below:



28.     Since the announcement of the Merger, the stock price has fallen sharply to $23.60,
$0.15 below the Merger Consideration, and has remained, within a few cents, since.

29.     In sum, it appears that the Merger Consideration fails to adequately compensate
Intrawest stockholders, and is the result of a flawed sales process during which Company

management and the Board failed to conduct a sufficient and robust review of strategic alternatives. It is therefore imperative that the Company's stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Information Statement, which is necessary for stockholders to properly exercise their corporate suffrage rights and make an informed decision concerning whether to submit for an appraisal of the Proposed Merger.

## II.    The Merger Agreement's Deal Protection Provisions Deter Superior Offers

30.    In addition to failing to conduct a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Intrawest

31.    First, the Merger Agreement contains a no solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for Intrawest stockholders.  The Merger Agreement states that the Company and the Individual Defendants shall not: (i) solicit, initiate, knowingly encourage or facilitate any inquiry, discussion, offer or request that constitutes, or would reasonably be expected to lead to, an alternative proposal (as used in this section, an "inquiry"); (ii) furnish non-public information regarding the Company and the Company subsidiaries to any person in connection with an inquiry or an alternative proposal; (iii) enter into, continue or maintain discussions or negotiations with any person with respect to an inquiry or an alternative proposal; (iv) otherwise cooperate with or assist or participate in or facilitate any discussions or negotiations regarding (other than to inform persons of the no solicitation obligations or to ascertain facts or clarify terms for the sole purpose of the Board reasonably informing itself about such alternative proposal), or furnish or cause to be furnished to any person or group any non-public information with respect to, or take any other

action to facilitate any inquiries or the making of any proposal that constitutes, or could be reasonably expected to result in, an alternative proposal; (v) approve, agree to, accept, endorse, recommend, execute or enter into any alternative proposal; (vi) submit to a vote of its stockholders, approve, endorse or recommend any alternative proposals; (vii) effect any adverse recommendation change; or (viii) enter into or agree to enter into any letter of intent, memorandum of understanding, agreement in principle or merger, acquisition, confidentiality or similar agreement contemplating or otherwise relating to any alternative proposal..

32.     Additionally, the Merger Agreement grants HHC recurring and unlimited matching rights, which provides it with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) several days to negotiate with Intrawest, amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received.

33.     The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that HHC can easily foreclose a competing bid.  As a result, these provisions unreasonably favor HHC, to the detriment of Intrawest's public stockholders.

34.     Lastly, the Merger Agreement provides that Intrawest must pay HHC a termination fee of $28,373,610 in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide Intrawest stockholders with a superior offer.

35.     Ultimately, these preclusive deal protection provisions restrain the Company's

ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

36.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Intrawest's stockholders receive all material information necessary for them to make a fully informed decision on whether to submit for an appraisal of the Proposed Merger.

### III.     The Materially Incomplete and Misleading Information Statement

37.     On May 22, 2017 Defendants caused the Information Statement to be filed with the SEC in connection with the Proposed Merger.  The Individual Defendants were obligated to carefully review the Information Statement to ensure that it did not contain any material misrepresentations or omissions.  However, the Information Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to submit for an appraisal of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act

38.     First, the Information Statement fails to provide material information concerning the Company's financial projections.  Specifically, the Information Statement provides projections for non-GAAP (generally accepted accounting principles) metrics, including Adjusted EBITDA, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

39.     When a company discloses non-GAAP financial measures in a proxy, the company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable

method), of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

40.    Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with stockholders. The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Intrawest has included in the Information Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

41.     In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

use of such projections.[2] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

42.     In order to make the projections included on page 47 of the Information Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

43.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measures, such as Adjusted EBITDA (*i.e.*, net income excluding net interest expense, income tax expense, depreciation and amortization). Such projections are necessary to make the non-GAAP projections included in the Information Statement not misleading.

44.     Intrawest regularly reconciles non-GAAP financial measures, including Adjusted EBITDA, to GAAP net income in their annual and quarterly financial reports submitted to the SEC (forms 10-K and 10-Q respectively). In fact, the Company has performed line item GAAP reconciliations in every 10-K or 10-Q they have ever filed with the SEC. Below is an excerpt from

---

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

their most recent 10-Q filed on May 4, 2017:

The following table reconciles net loss attributable to the Company to total Adjusted EBITDA for the periods presented (in thousands):

| | Three Months Ended March 31, | | Nine Months Ended March 31, | |
|---|---|---|---|---|
| | 2017 | 2016 | 2017 | 2016 |
| Net income attributable to Intrawest Resorts Holdings, Inc. | $ 156,277 | $ 174,470 | $ 93,176 | $ 100,122 |
| Legacy and other non-core (income) expenses, net | (803) | 16 | 814 | 4,458 |
| Other operating expenses | 5,131 | 2,601 | 10,179 | 5,153 |
| Depreciation and amortization | 14,450 | 15,264 | 43,840 | 44,802 |
| Gain on sale of Intrawest Resort Club Group | — | (40,481) | — | (40,481) |
| (Gain) loss on disposal of assets | (1,637) | 1,634 | (498) | (693) |
| Interest income | (84) | (99) | (204) | (235) |
| Interest expense | 8,964 | 10,208 | 27,931 | 30,639 |
| Earnings from equity method investments | (6,990) | (5,401) | (9,776) | (4,019) |
| Loss on extinguishment of debt | — | — | 820 | — |
| Pro rata share of Adjusted EBITDA related to equity method investments | 2,214 | 2,119 | 4,049 | 3,664 |
| Adjusted EBITDA attributable to noncontrolling interest | (1,463) | (1,486) | (465) | (2,619) |
| Other (income) expense, net | (351) | 1,184 | (569) | (4,026) |
| Income tax expense | 240 | 261 | 556 | 1,529 |
| Income attributable to noncontrolling interest | 1,042 | 1,006 | 292 | 1,918 |
| Total Adjusted EBITDA | $ 176,990 | $ 161,296 | $ 170,145 | $ 140,212 |
| | | | | |
| Mountain Adjusted EBITDA | $ 148,357 | $ 136,704 | $ 138,767 | $ 110,781 |
| Adventure Adjusted EBITDA | 24,592 | 21,246 | 23,870 | 22,616 |
| Real Estate Adjusted EBITDA | 4,041 | 3,346 | 7,508 | 6,815 |
| Total Adjusted EBITDA | $ 176,990 | $ 161,296 | $ 170,145 | $ 140,212 |

45.     With respect to Deutsche Bank's Discounted Cash Flow Analysis, the Information Statement fails to disclose the following key components used in their analysis: (i) the inputs and assumptions underlying the calculation of the discount rate range of 9.5% to 11.25%; (ii) the Terminal Value of the company; (iii) the inputs and assumptions underlying the calculation of the perpetuity growth rate range of 1.5% to 2.5%; and (iv) the value of unlevered tax savings from the Company's United States and Canadian net operating loss carryforwards.

46.     With respect to Moelis' Discounted Cash Flow Analysis, the Information Statement fails to disclose the following key components used in their analysis: (i) the inputs and assumptions underlying the calculation of the discount rate range of 9.2% to 11.3%; (ii) the estimated terminal values of the company; and (iii) the inputs and assumptions underlying the calculation of the perpetuity growth rate range of 1.0% to 3.0%;

47.     These key inputs are material to Intrawest stockholders, and their omission renders the summary of Deutsche Bank's Discounted Cash Flow Analysis on page 34 of the Information Statement and Moelis' Discounted Cash Flow Analysis on pages 42-44 of the Information Statement incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> **There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion <u>unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices</u>**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions. *Id.* at 1577-78.

48.     In sum, the omission of the above-referenced information renders statements in the Information Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information sufficiently prior to the set deadline of June 12, 2017, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to exercise their appraisal rights in the Proposed Merger, and

they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

51.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

52.     SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement.  The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading."   17 C.F.R. § 244.100(b).  The reconciliation requirement requires an issuer that chooses to disclose a

non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).  As set forth above, the Information Statement omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

53. The omission of information from an Information Statement statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

54. Each of the Defendants reviewed and authorized the dissemination of the Information Statement, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company; and (ii) the valuation analyses performed by the Company's financial advisors, Deutsche Bank Securities Inc. ("Deutsche Bank") and Moelis & Company LLC ("Moelis"), in support of their fairness opinions.

55. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Information Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

56. The Individual Defendants knew or were negligent in not knowing that the Information Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the

omitted information identified above in connection with their decision to approve the Proposed Merger; indeed, the Information Statement states that Deutsche Bank and Moelis reviewed and discussed their financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Deutsche Bank and Moelis as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company.

57.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Information Statement, rendering the sections of the Information Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review Deutsche Bank's and Moelis' analyses in connection with their receipt of the fairness opinions, question Deutsche Bank and Moelis as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Information Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

58.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Information Statement.  The preparation of an Information Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Information Statement or failing to notice the material omissions in the Information Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

59.     Intrawest is also deemed negligent as a result of the Individual Defendants'

negligence in preparing and reviewing the Information Statement.

60.     The misrepresentations and omissions in the Information Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision on whether to submit for an appraisal of the Proposed Merger if such misrepresentations and omissions are not corrected sufficiently prior to the June 12, 2017 deadline.

61.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of Intrawest within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Intrawest, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Information Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Information Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance

of the statements or cause the statements to be corrected.

65.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Information Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

66.     In addition, as the Information Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Information Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

67.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

69.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Information Statement;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 2, 2017

**OF COUNSEL**

**FARUQI & FARUQI, LLP**

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
Email: nfaruqi@faruqilaw.com
        jwilson@faruqilaw.com

Respectfully submitted,

**MONTEVERDE & ASSOCIATES PC**

By:  */s/ Juan Monteverde*
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*